UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**PATRIOT DISASTER SPECIALIST L L C**          **CASE NO. 2:22-CV-06016**

**VERSUS**                                                              **JUDGE JAMES D. CAIN, JR.**

**SHELLEY HACKER ET AL**                              **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the Court is "Defendants' Motion for Summary Judgment" (Doc. 29) wherein Shelley Hacker ("Hacker) and Allstate Insurance Company ("Allstate") (collectively referred to as Defendants) move for summary judgment to dismiss all of Plaintiff, Patriot Disaster Specialist, LLC's ("Patriot") claims in this matter, excepting Patriot's claim for unjust enrichment.

## BACKGROUND

On October 15, 2020, Shelley Hacker ("Hacker") and Patriot Disaster Specialist, LLC ("Patriot") entered into a written contract entitled: "CONTRACT FOR SERVICES, ASSIGNMENT OF BENEFITS, DIRECT PAYMENT AUTHORIZATION AND HOLD HARMLESS AGREEMENT" (sometimes referred to as "Contract 1") for water mitigation and mold remediation.[1] A second contract between the parties was signed on February 11, 2021, entitled: "CONTRACT FOR SERVICES, ASSIGNMNET OF BENEFITS,

---

[1] Doc. 1-2 P. 23 – October 15, 2020, contract.

DIRECT PAYMENT AUTHORIZATION AND HOLD HARMLESS AGREEMENT" (sometimes referred to as Contract 2) for pack out.[2]

The work specified under the two contracts was performed by Patriot at the property, owned by Hacker and located at 3805 Placid Lane, Lake Charles, Louisiana.[3] The sum of the claim owed to Patriot for the first contract is $139,162.30.[4] The sum of the claim owed to Patriot for the second contract is $19,588.65.[5] As of April 28, 2022, the total sum claimed owed under both contracts was $158,750.95, plus attorney's fees, cost and interest.[6]

On August 31, 2022, Patriot instituted this lawsuit against Hacker and her homeowner's insurer, Allstate, asserting causes of action based on breach of contract, work and labor, unjust enrichment, and bad faith claim handling adjustment. Patriot alleged "the contract stated in part '…customer agrees that all cost, expenses and attorney's fees incurred by [Plaintiff] to collect money owed, will be added to the amount becoming due and payable…' (Ex.1)."[7] Additionally, Patriot alleged the Hacker contract, "also stated in part '…if full payment is not paid by your insurance company, the balance due or total payment becomes the responsibility of you, the Client, and is due within 14 days of work being completed. Any amount paid 30 days after the due date shall be calculated based on 1% per month *(12% annual rate), but in no event more than minimum lawful amount that

---

[2] Doc. 1-2 P. 57 – February 11, 2021, contract.
[3] Doc. 1-2 P. 11, ¶ 3, Complaint.
[4] Doc. 1-2 P. 15, ¶ 11, Complaint
[5] Doc. 1-2 P. 15, ¶¶ 11-12, Complaint.
[6] Doc. 1-2 P. 15, ¶ 14, Complaint.
[7] Doc. 1-2 P. 14, ¶ 8, Complaint.

can be charged'" (Exhibit 1)."[8] The complaint further alleged the work performed by Patriot under the contract was to address the damages sustained to the Hacker property from Hurricane Delta of October 9, 2020.[9]

Under its breach of contract allegations against Hacker, Patriot alleges Hacker breached the agreement when she failed to pay the amounts due.[10] Patriot also alleges that it is entitled to interest for the unpaid amount of the two Contracts. Under its second claim against Hacker, Patriot alleged Hacker owes plaintiff for work, labor and other costs it provided to Hacker.[11] Under the unjust enrichment claim against Hacker, pursuant to Louisiana Civil Code Article 2298, Patriot alleges Hacker has been unjustly enriched by Patriot's work, labor and materials without compensating Patriot.

Defendants allege that no language exists in any contract whereby Hacker agreed to pay any interest charge for failure to pay the amount due, as Patriot alleged in the complaint. Defendants also allege the following: (1) there is no assignment of benefits language in either contract, (2) Patriot did not have the required state license to legally perform mold work when the contract was signed and executed,[12] (3) Patriot did not have the required state license to legally perform contractor work when its contract was signed and executed. Defendants argue that contracts made with an unlicensed contractor and mold remediator contractor are null and void and thus are not enforceable.

---

[8] Doc. 1-2 P. 14, ¶ 9, Complaint.
[9] Doc. 1-2 pp. 18-19, ¶¶ 24-31, Complaint.
[10] Doc. 1-2 P. 16, ¶¶ 16-19, Complaint.
[11] Doc. 1-2 P. 17, ¶ 21, Complaint.
[12] Exhibit – 2 – affidavit Dal Fusilier.

## LAW AND ANALYSIS

Defendant, Allstate, moves for dismissal because the two aforementioned contracts executed by Patriot and Defendant Hacker, are not a proper assignment of benefits. Hence, Allstate argues that Patriot has no claims against it, including Patriot's alleged bad faith claim, collection fees and expenses. Defendants, Hacker and Allstate move for the Court to declare both contracts null and void because Patriot did not have a mold remediation license or a Louisiana state contractor's license. Defendants, Hacker and Patriot, concede that Patriot's unjust enrichment claim against Hacker remains viable.[13]

*Assignment of benefits*

Noting that both contracts include a section labeled "Assignment of Insurance Benefits and Direct Payment Authorization," Defendants argue that neither truly assigns Hacker's benefits or rights against Allstate to Patriot.[14] Patriot argues that no special language is necessary, and the contract is clear that Hacker intended to assigner her insurance benefits to Patriot. The Court disagrees.

When the language of a contract is clear, unambiguous, and leads to no absurd consequences, no further interpretations may be made regarding the parties' intent.[15] The contracts provide the following pertinent express language:

> Assignment of Insurance Benefits and Direct Payment Authorization: I hereby authorize payment directly to PDS [Patriot] for labor and materials supplied. I request that the assignment be separated from any other payment

---

[13] Doc. 29-1, pp. 3 and 12.
[14] Doc. 32-1, p. 1; Doc. 32-2, p. 1.
[15] LSA-C.C. Art. 2046; *Falco Lime, Inc. v. Plaquemine Contracting Co., Inc.*, 672 So.2d 356, 360 (La. App. 1 Cir. 1996).

Page **4** of **10**

related to this claim. I convey power attorney to PDS to negotiate settlement. I, the Client, understand that Client's insurance policy may contain an arbitrary cap on services which requires additional approval. Should such a cap be contained in my policy, this document hereby operates as a direct request to my insurance company for approval to exceed such cap upon submission of this document: I hereby direct my insurance carrier(S) and mortgage company to communicate directly with PDS and release any and all information requested by it, its representative, and/or attorney for the direct purpose of obtaining actual benefits to be paid for services rendered or to be rendered. Should no claim yet exist, I agree and authorize that submission of this document shall operate as a first notice of a claim to my insurance company on my behalf.[16]

This language explicitly provides that, under the assignment heading, Hacker merely authorized Allstate to make direct payments to Patriot for services rendered.[17] The contracts never state that Hacker assigned any benefits to Patriot, nor any insurance rights. Accordingly, Patriot has no standing to bring such claims against Allstate.

Similarly, Patriot cannot bring any bad faith claims against Allstate because Hacker never assigned Patriot any extra-contractual rights. Bad-faith claims, "must be expressly provided for in the act of assignment." *Disaster Relief Servs. Of N. Carolina, LLC v. Mut. Cas. Ins. Co.*, 2009 WL 935963, at *6 (W.D. La. Apr. 6, 2009); *accord Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, 2009 WL 86671 (E.D. La. Jan. 13, 2009). It is the insured (as property owner) and not the assignee who will have suffered as a result of any delay in payment, and whose interests the bad faith statutes are designed to protect. See *Franks v. Liberty Pers. Ins. Co.*, 2023 WL 2309819, at *2 (W.D. La. Mar. 1, 2023).

---

[16] Defendant's exhibit not identified, Doc. 32-1, p. 1.
[17] Doc. 32-1, p. 1; Doc. 32-1, p. 1.

Just as no contractual rights were assigned to Patriot, Hacker never assigned any extra-contractual rights, as evidenced by the language of the contract between the two parties.[18]

*Are the contracts enforceable?*

Defendants maintain that both contracts are null and void because when they were executed, Patriot was unlicensed in the state of Louisiana as a contractor and a mold remediator.

According to LA Rev. Stat § 37:2185:

> Beginning July 1, 2004, no person shall engage in or conduct, or advertise or hold himself out as engaging in or conducting the business of, or acting in the capacity of a person who conducts mold remediation unless such person holds a mold remediation license as provided for in this Chapter.

Under La. R.S. 37:2158, "no person may engage in the business of contracting, or act as a contractor," without a valid, active license. Contracting includes, among other things, "the removal, cleaning, sanitizing, demolition, or other treatment, including preventative activities, of mold or mold-contaminated matter," but not any work covering water mitigation. Louisiana Revised Statutes 37:2150 and 2157. Contract 1 is marked with an "x" to indicate that Patriot was to perform both mold remediation and water mitigation services on Hacker's home; Patriot alleges that no mold remediation was actually performed.[19] Under this theory, the contract would not be void.

Much of Patriot's charges were for water mitigation services. The invoice reflects a charge for "[application of a] plant-based anti-microbial agent" to the surface area, "more

---

[18] Doc. 32-1, p. 1; Doc. 32-2, p. 1.
[19] Doc. 32-1, p. 1.

Page **6** of **10**

than the ceiling," or "more than the floor" of nearly every room was included.[20] Plant-based anti-microbial agents are commonly used to kill bacteria, pathogens, microorganisms, and mold.

Defendants rely on the fact that "mold remediation" work is specifically marked on the Contract. The Court notes that "water mitigation" is also marked.[21] The invoice submitted by Patriot does not reflect that mold remediation work was performed. Based on the Court's review of the detailed, itemized invoice, it appears that the work performed is more indicative of water remediation, despite preventative measures such as applying plant-based anti-microbial agents.[22] Accordingly, the Court will deny Defendants' motion for summary judgment concerning the requirement of Patriot to hold a mold remediation licensing.

Louisiana Revised Statute § 37:2163(A)(1) provides that it is unlawful for any person to engage in the business of contracting, unless he holds an active license as a contractor. Contracts made with an unlicensed contractor are an absolute nullity. Louisiana Civil Code article 2033; *TradeWinds Env't Restoration, Inc. v. Stewart*, 2008 WL 236891, at *3 (E.D. La. Jan. 28, 2008), *aff'd sub nom, TradeWinds Env't Restoration, Inc. v. Stewart Dev. Liabl. Co.*, 409 F.App'x 805 (5th Cir. 2011); *Quatermary Res. Investigations, LLC v. Phillips*, 316 So.3d 448, 459 (La. App. 1 Cir. 11/19/20). Additionally, a contract that is an absolutely nullity may not be confirmed or otherwise ratified. Louisiana Civil Code article 2030.

---

[20] Doc. 32-3, pp. 3-5, 7-13, 15-30.
[21] Defendants' exhibit not identified, Doc. 35-1.
[22] Defendants exhibit not identified. 35-3.

Under La. R.S. § 37:2150.1, a contractor is defined as any person who undertakes or offers to construct, supervise or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment for improvements or repairs where the cost exceeds seven thousand five hundred dollars to an existing residential structure. See *24/7 Restoration Specialist, LLC v. Young*, 2023 WL 3816973 (E.D. La. June 5, 2023) and *CCAPS, LLC v. HD and Associates, LLC*, No. 21-2195, 2023 WL 1965087, (E.D. La. Feb. 13, 2023). (finding that contracting included services such as removing ceilings, walls, water-damaged carpet, sheetrock, drywall, insulation, baseboards, and cabinetry because these types of services alter the property).

The purpose of these licensing provisions is to protect the State's citizens by ensuring contractors are qualified. *Tradewinds Environmental Restoration, Inc. v. St. Tammany Park. L.L.C.*, No. 06-593 2007 WL I191896 (E.D. La. April 20, 2007), *3. Hacker alleges that Patriot's invoices contain numerous errors and misrepresentations, and Defendants' expert opines that Patriot failed to follow proper, established mold remediation standards by failing to document sufficient data resulting in the misdiagnosis of affected versus nonaffected building materials.[23]

However, dewatering and mitigation work does not require a license to be issued from the Louisiana State Licensing Board for Contractors ("LSLBC"). On August 1, 2022, Louisiana Revised Statute section 37:2157 was amended to expressly exempt "dewatering

---

[23] Defendants exhibit 3, Shelly Hacker Affidavit; Defendants' exhibit 2, Dal Fusilier Affidavit.

or water mitigation" from the Provisions of Part I of Chapter 24 governing the law of contractors in Louisiana. See 2022 La. Sess. Law Serv. Act 195 (H.B. 602).

The Patriot invoices indicate that its services included tearing out drywall, insulation, trim, baseboards, carpet, carpet pad, tackles strip, floating floors, door and window trim, crown trim, detach and reset light fixtures, heat/AC register, and ceiling fans.[24]

As in *R A C M LLC v. Glad Tidings Assembly of God Church of Lake Charles*, Civ. Action No. 21-3580, the Court recognized that the LSLBC website expressly states that "water extraction, carpet removal, and damaged drywall removal do not require a license from LSLBC." In that case the undersigned was concerned that every water/mitigation service will inherently include tearing down dry wall, and some type of demolition, which would make every water/mitigation contract subject to Louisiana's construction contractor's licensing requirement. As such, that would directly contravene Louisiana's law that exempts water/mitigation services from the licensing requirement.

As noted above, the Court has reviewed the Patriot invoices, and finds that the work performed was water mitigation, and not a construction-based job. As such, the Court will deny Defendants Motion for Summary Judgment concerning the requirement of a contractor's license.

---

[24] Plaintiff's exhibit not identified, Doc. 35-3.

*Payment of interest*

Defendants move to dismiss Plaintiff's claim for interest for any unpaid amounts. Plaintiff alleges in its Petition for Breach of Contract that

> "[t]he Contract also stated in part"... if full payment is not paid by your insurance company, the balance due or total payment becomes the responsibility of you, the Client, and is due within 14 days of the work being completed. Any amount not paid 30 days after the due date shall be calculated based on 1% per month *(12% annual rate), but in no event more than minimum lawful amount that can be charged". (Exhibit 1).[25]

The Court has review Exhibit 1, referring to Contract 1, which was attached to Patriot's original Petition filed in state court. This language is not in Contract 1 as alleged by Patriot. The Court has no idea where Patriot contrived this language. Accordingly, the Court will grant Defendants' motion as to Patriot's claim for interest on any unpaid amounts.

## **CONCLUSION**

For the reasons explained herein, the Court will grant Defendant, Allstate's motion to the extent that the Court finds that there is no valid assignment of benefit as to the Patriot contracts and Defendants' Motion to dismiss any claim for interest as alleged in Paragraph 9 of Patriot's Petition for Breach of Contract; otherwise, the Court will deny the Motion for Summary Judgment.

**THUS DONE AND SIGNED** in Chambers on this 31st day of July, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[25] Doc. 1-2, para 9.